# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KUAN CHENG, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No.<br>) 18-12533-FDS |
| UNITED STATES SPORTS ACADEMY, INC., | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM AND ORDER ON
## DEFENDANT'S MOTION TO DISMISS

**SAYLOR, J.**

This is a dispute arising out of enrollment in an internet-based education program. Defendant United States Sports Academy, Inc. ("USSA") is a private online educational institution based in Alabama. Plaintiff Kuan Cheng enrolled in a USSA program while living in Alabama. He then moved to Massachusetts. Cheng alleges that when he attempted to complete his degree from Massachusetts, USSA improperly required him to re-enroll, and then informed him that the degree requirements had changed.

The complaint alleges that USSA engaged in unfair and deceptive business practices in violation of Mass. Gen. Laws ch. 93A. Specifically, it alleges that USSA misled Cheng about the requirements for its degree program, and that Cheng relied on those misrepresentations by continuing to pay tuition to USSA. It further alleges that as a result of USSA's actions, Cheng lost, among other things, years of work, his ability to obtain a degree without starting from scratch, tuition, and the loss of income associated with pursuing a degree. The complaint also alleges common-law claims for breach of contract, unjust enrichment, and fraudulent

inducement.

Defendant has moved to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for *forum non conveniens*.[1] For the following reasons, the motion to dismiss for lack of personal jurisdiction will be granted.

I. **Background**

A. **Factual Background**

Unless otherwise noted, the following facts are undisputed or presented as stated in the complaint.

The United States Sports Academy, Inc. ("USSA") is a private online educational institution organized and incorporated under the laws of Alabama. (Compl. ¶¶ 2, 4; Rosandich Aff. ¶¶ 1-3). It is regionally accredited by the Southern Association of Colleges and Schools Commission on Colleges to award baccalaureate, master's, and doctoral degrees. (Rosandich Aff. ¶ 1; Pl. Mem. Ex. 1).[2]

USSA offers a "Distance Learning Program" that enables students to complete the entire curriculum for their degrees away from campus. (Rosandich Aff. ¶ 3). Its website touts the

---

[1] The Court will treat the motion to dismiss on the basis of *forum non conveniens* as a motion, in the alternative, to transfer the case to a district court in Alabama, pursuant to 28 U.S.C. § 1404(a). It is true that "[a] federal court has discretion to dismiss a case on the ground of *forum non conveniens* 'when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (quoting *American Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994)). However, the Supreme Court has held that the common-law doctrine of *forum non conveniens* "has continuing application [in federal courts] only in cases where the alternative forum is abroad," as well as in certain other rare instances not applicable here. *See id.* at 430 (quoting *American Dredging Co.*, 510 U.S. at 449, n.2). Instead, in passing § 1404(a), Congress "codified the doctrine and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action. *Id.*; *see also Albion v. YMCA Camp Letts*, 171 F.3d 1, 2 (1st Cir. 1999). That statute provides as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

[2] Degrees granted by USSA are recognized in Massachusetts. (Compl. ¶ 4; Pl. Mem. Ex. 2).

2

advantages of that program: "The Academy's Distance Learning Program offers students the flexibility to take courses and complete degrees without leaving their homes or jobs. Students can complete their courses ANY time, ANY place and at ANY pace." (Pl. Mem. Ex. 2). USSA provides that flexibility to its students by "deliver[ing degrees] online in an asynchronous environment. This means professors and students do not have to be online at the same time for learning to take place or assignments to be completed." (*Id.*). Students access all online courses through a website that offers them 24-hour access to their coursework. (*Id.*).

According to USSA, its officers direct, control, and coordinate the school's activities from its corporate headquarters and administrative offices in Daphne, Alabama. (Rosandich Aff. ¶¶ 4, 10).[3] USSA pays no taxes in Massachusetts, has no registered agent in the state, and does not maintain a Massachusetts telephone number or address. (*Id.*).

According to USSA, it does not actively solicit business in Massachusetts. (Rosandich Aff. ¶ 6; *cf.* Compl. ¶ 2). USSA also asserts that as of January 10, 2019, it had only two Massachusetts-based students, neither of whom is seeking a degree. (Rosandich Aff. ¶ 9).

Kuan Cheng is formerly a resident of Alabama, now living in Massachusetts. (Compl. ¶ 1; Rosandich Aff. ¶ 8). In 2008, while in Alabama, Cheng enrolled in USSA's doctorate program in the field of sports management. (Compl. ¶ 3; Rosandich Aff. ¶¶ 7-8).[4] At the time of his enrollment, that degree required, among other things, passing a comprehensive examination. (Compl. ¶¶ 6-7). He had ten years from his initial enrollment in which to complete his degree requirements. (*Id.* ¶ 14).

---

[3] Thomas Rosandich, the President and CEO of USSA, works out of the Daphne office. (Rosandich Aff. ¶ 4).

[4] Because of a lack of enrollment in 2008, Cheng was placed into the 2007 cohort of USSA students. (Compl. ¶ 5).

Between 2008 and 2010, Cheng completed 42 credits of coursework, most of which while living in Alabama. (Compl. ¶ 10; Rosandich Aff. ¶ 8).[5]

In 2009, USSA changed the degree requirements for Cheng's doctorate program. (Compl. ¶¶ 6-7). Accordingly, he was given the option to change his degree requirement from a comprehensive examination to a portfolio requirement. (*Id.*).[6] He accepted that offer by submitting a catalog change request form, which was approved by the admissions department on February 2, 2010. (*Id.* ¶ 7). The admissions department then enrolled him in the 2009 student cohort with a portfolio requirement and assigned him a portfolio advisor. (*Id.* ¶¶ 8-9).

To satisfy his portfolio requirement, Cheng was required, among other things, to complete an experiential-education component consisting of a "mentorship," essentially an internship, in the field. (Compl. ¶ 11; Rosandich Aff. ¶ 8; *see also* Pl. Mem. Ex. 1).[7] In March 2010, he registered for that mentorship requirement, to be completed at a church in New York. (Compl. ¶ 11; Rosandich Aff. ¶ 8).

Cheng worked on his portfolio over the source of several years. (Compl. ¶¶ 10-12). All of his progress was submitted to and approved by his portfolio advisor, with the exception of a few papers. (*Id.* ¶ 12).[8]

Some time between 2010 and 2015, Cheng moved to Massachusetts, and took a break

---

[5] He completed one term at a Missouri university. (Rosandich Aff. ¶ 8).

[6] Other than the fact that the portfolio requirement involved submitting papers and other progress to a portfolio advisor for approval and completing an internship, but not passing a comprehensive examination, it is not clear what, exactly, the portfolio requirement entailed. (*See* Compl. ¶¶ 6-13; Rosandich Aff. ¶ 8).

[7] USSA describes the field-study component of its degrees on its website: "[L]earning in the field complements study in courses. Internships (in your local area, unless you choose otherwise) help build the professional networks that lead to satisfying employment." (Pl. Mem. Ex. 1). It is not clear whether USSA arranges local internships on behalf of its students, or whether that responsibility falls on the students themselves.

[8] Cheng's portfolio was nearly complete, in fact—his only remaining degree requirement was a dissertation. (Compl. ¶¶ 12-13). He was unable to register for that dissertation, however, as he had not yet completed his portfolio requirement. (*Id.* ¶ 13).

4

from the doctorate program while earning a master's degree in acupuncture there. (*Id.* ¶¶ 1, 15). He alleges that in 2016, he attempted to resume work on his doctorate degree, because he was aware that he would need to complete his program requirements within ten years of his initial USSA enrollment. (*Id.* ¶ 16). However, when he tried to log on to USSA's online course management platform he was unable to do so. (*Id.*). He contends that he immediately contacted USSA about the issue, and was told that he had been removed from enrollment, and that he would need to re-enroll if he was still interested in pursuing his degree. (*Id.* ¶ 17).

According to Cheng, he submitted an application to re-enroll. (*Id.*). He received an e-mail from a USSA employee confirming receipt of his re-enrollment application. (*Id.* ¶ 18). That e-mail stated, among other things, that he would be required to take a comprehensive examination in order to complete his degree requirements. (*Id.*). He responded to that e-mail explaining the history of his degree requirements. (*Id.* ¶ 19). The USSA employee agreed to look into the issue and get back to him. (*Id.*).

On February 17, 2016, Cheng received an acceptance of his re-enrollment application from a USSA admissions counselor, signed by the dean of academic affairs. (*Id.* ¶ 20). That acceptance referred to USSA's 2008 course catalog. (*Id.*). The admissions counselor later clarified that Cheng was enrolled in the 2009, not 2008, catalog, with its corresponding portfolio requirement. (*Id.*).

Cheng alleges that in May 2017, he was again unable to access his USSA online course management account. Upon investigation, he learned that his portfolio had been deleted. (*Id.* ¶ 21).

According to the complaint, in June 2017, the dean of academic affairs of USSA informed Cheng that he would, in fact, be required to pass a comprehensive exemption in order

5

complete his degree requirements, without exception. (*Id.* ¶ 22).

## B. Procedural Background

Cheng filed the complaint in this action in Suffolk Superior Court on September 18, 2018. The complaint alleges claims for unfair and deceptive business practices in violation of Mass. Gen. Laws ch. 93A, as well as common-law claims for breach of contract, unjust enrichment, and fraudulent inducement.

Defendant timely removed the case to this Court on December 17, 2018.

## II. Personal Jurisdiction

As to the basis for this Court's jurisdiction over USSA, the complaint alleges only that USSA "exercise[s] sufficient contacts within [sic] Massachusetts and conduct[s] business within the Commonwealth." (Compl. ¶ 2). USSA has moved to dismiss for lack of personal jurisdiction, contending that neither the requirements of the Massachusetts long-arm statute nor the Due Process Clause of the United States Constitution have been satisfied.

## A. General Principles

The exercise of personal jurisdiction over a defendant must be both authorized by statute and consistent with the due process requirements of the United States Constitution. *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 712 (1st Cir. 1996); *Intech, Inc., v. Triple "C" Marine Salvage*, Inc., 444 Mass. 122, 125 (2005); *Good Hope Indus., Inc. v. Ryder Scott, Co.*, 378 Mass. 1, 5-6 (1979).

Due process requires that a defendant over whom a Massachusetts court will exercise jurisdiction has maintained "minimum contacts" with the state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Supreme Court has defined two categories of

personal jurisdiction: general and specific. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). As applied to corporations, general jurisdiction reaches "causes of action arising from dealings entirely distinct from" a foreign corporation's in-state contacts. *International Shoe Co.*, 326 U.S. at 318.

Specific jurisdiction is limited to claims that "aris[e] out of or [are] related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Over the years, the Supreme Court "has increasingly trained on the 'relationship among the defendant, the forum, and the litigation,' i.e., specific jurisdiction, [and] general jurisdiction has come to occupy a less dominant place in the contemporary scheme." *Daimler*, 134 S. Ct. at 758 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

The plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002). In considering a motion to dismiss under Rule 12(b)(2), the court may employ several standards to assess whether plaintiff has carried that burden: the "*prima facie*" standard; the "preponderance-of-the-evidence" standard; or the "likelihood" standard. *See id.* at 50-51, 51 n.5; *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145-46 (1st Cir. 1995). Where, as here, the court is called to make that assessment without first holding an evidentiary hearing, the *prima facie* standard is applied. *See United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001). Under that standard, the court takes the plaintiff's "properly documented evidentiary proffers as true and construe[s] them in the light most favorable to [plaintiff's] jurisdictional claim." *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016) (citing *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008)). A plaintiff may not "rely on unsupported allegations in [its] pleadings." *A Corp.*, 812 F.3d at 58 (quoting *Platten v.*

*HG Bermuda Exempted Ltd.*, 437 F.3d 118, 134 (1st Cir. 2006)). "Rather, [the plaintiff] must put forward 'evidence of specific facts' to demonstrate that jurisdiction exists." *Id.* (quoting *Foster-Miller*, 46 F.3d at 145). Facts offered by the defendant "become part of the mix only to the extent that they are uncontradicted." *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009) (quoting *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007)).

To establish personal jurisdiction, plaintiff must show that the requirements of the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, are satisfied, and that the exercise of jurisdiction is consistent with constitutional due process. *Daynard*, 290 F.3d at 52; *Intech, Inc.*, 444 Mass. at 125. Due process requires that a plaintiff alleging specific personal jurisdiction establish the existence of three conditions:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must be reasonable.

*Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016) (quoting *Phillips*, 530 F.3d at 27 (alterations omitted)).

"The jurisdictional requirements imposed by the Massachusetts long-arm statute are quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the Due Process Clause." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). Because the "modest differences" between the two are immaterial here, this analysis will begin directly with the constitutional test. *Id.*

### B. General Jurisdiction

"A court may assert general jurisdiction over foreign [state] corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic'

as to render them essentially at home in the forum State." *Goodyear Dunlop*, 564 U.S. at 919. To be "at home" in a foreign state, a corporation must has affiliations with that state so substantial that it is "comparable to a domestic enterprise in that State." *Daimler*, 134 S. Ct. at 758 n.11. The Supreme Court has indicated that such jurisdiction will exist only in the "exceptional case." *See id.* at 761 n.19.

It is clear a Massachusetts court may not assert general jurisdiction over USSA. USSA is an online education program that is available to Massachusetts residents who choose to enroll in it. Its corporate headquarters are located in Alabama. It pays no taxes in Massachusetts, has no registered agent in the state, and maintains no Massachusetts address or telephone number. According to USSA, it does not advertise or solicit enrollment in Massachusetts, and currently has only two Massachusetts-based students, neither of whom is seeking a degree through USSA. Presumably, whatever revenue it has earned from Cheng and other Massachusetts-based students is relatively minimal. (*See* Pl. Mem. at 2) ("[Cheng] paid tuition of $40,000 for an online doctorate course.").

The complaint simply alleges that USSA "exercise[s] sufficient contacts within [sic] Massachusetts and conduct[s] business within the Commonwealth." (Compl. ¶ 2). However, in support of that contention, the complaint alleges only that the USSA has conducted business with a single specific Massachusetts resident (Cheng himself) and that the degrees it grants are recognized in Massachusetts. In his memorandum, Cheng identifies a number of other contacts that USSA has with Massachusetts—some, but not all, of which are supported by the attached exhibits. Those contacts include maintaining a website available to anyone (in any state); contacting local agencies (in Massachusetts and elsewhere) to obtain scholarships and financing; drawing business away from local degree programs in Massachusetts (and elsewhere); and

submitting certificates of degree completion that are accepted by Massachusetts licensing authorities (and those of other states). (Pl. Mem. at 2-3). None of those contacts are specific to Massachusetts, however. And, because USSA has only a handful of Massachusetts students, USSA's contacts with the state are likely sporadic, at best.

In short, the activities of USSA in Massachusetts cannot be characterized as so "continuous and systematic" that it must be deemed "at home" in the state. *See Kloth v. Southern Christian Univ.*, 320 F. App'x 113, 117 (3d Cir. 2008) ("Defendants' maintenance of a Web site that posts information about the school and is accessible to potential students in foreign jurisdictions is insufficient to subject a non-resident defendant to general jurisdiction"); *Watiti v. Walden Univ.*, 2008 WL 2280932, at *7 (D.N.J. May 30, 2008) ("An online university's ongoing relationship with only one student, particularly a student who relocated to the forum state subsequent to her application, admission, and enrollment in [the] school's distance learning program, does not constitute the kind of continuous and substantial activity necessary [to] support the exercise of general personal jurisdiction over the school."); *see also Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985) (declining to find higher-education institution "at home" merely because it advertised in, recruited students from, and maintained contacts with alumni in the forum state); *Corrales Martin v. Clemson Univ.*, 2007 WL 4531028, at *5-6 (E.D. Pa. Dec. 20, 2007) (same); *Chira v. Columbia Univ. in the City of New York*, 2005 WL 8156561, at *6 (C.D. Cal. May 3, 2005) (same); *Scherer v. Curators of Univ. of Missouri & Law Sch. Admission Council*, 152 F. Supp. 2d 1278, 1282-83 (D. Kan. 2001) (same); *Gallant v. Trustees of Columbia Univ. in City of New York*, 111 F. Supp. 2d 638, 641 (E.D. Pa. 2000) (same).

Accordingly, there is no basis for the assertion of general jurisdiction over USSA.

### C. Specific Jurisdiction

To assess specific jurisdiction, the court must ask (1) whether the claims are "related to" defendant's activities in Massachusetts; (2) whether the defendants have purposefully availed themselves of the laws of Massachusetts; and (3) whether the exercise of jurisdiction would be reasonable. *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 135 (1st Cir. 2006). In cases involving interactions through a website that is operated from outside the forum state that residents in that state can access, the focus of this analysis has typically been on the "purposeful availment" requirement. *See, e.g.*, *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 35-36 (1st Cir. 2010); *Sportschannel New England Ltd. P'ship v. Fancaster, Inc.*, 2010 WL 3895177, *5-7 (D. Mass. Oct. 1, 2010); *BroadVoice, Inc. v. TP Innovations LLC*, 733 F. Supp. 2d 219, 224-27 (D. Mass. 2010); *Back Bay Farm, LLC v. Collucio*, 230 F. Supp. 2d 176, 185 n.10 (D. Mass. 2002).

The issue of whether a university's enrollment of an out-of-state student in an online distance-learning program satisfies the purposeful availment requirement with respect to the state of the student's residence has been directly addressed by multiple courts. In *Chase v. Gist*, 2012 WL 1581682 (D. Mass. May 3, 2012), this court declined to exercise jurisdiction over the defendant university by virtue of the plaintiff's participation in its distance-learning program. Like USSA, the defendant university in that case "neither advertise[d] in Massachusetts nor target[ed] Massachusetts residents as prospective students . . . [and,] [o]ther than plaintiff, few, if any, Massachusetts residents ha[d] enrolled in the school's online program." *Id.* at *3. Because the program was "not directed at Massachusetts any more than it is at the world at large," this court concluded that "plaintiff's participation in that program [was] not sufficient to meet the minimum requirements for the exercise of jurisdiction, either under the Massachusetts long-arm statute or the Due Process Clause." *Id.* at *6.

The decision in *Chase* was based, in large part, on the reasoning in *Kloth v. Southern Christian Univ.*, 320 F. App'x 113 (3d Cir. 2008). In *Kloth*, the Third Circuit considered the jurisdiction of a district court in Delaware to hear a claim against a university in Alabama arising from the plaintiff's attempt to earn a degree through the school's online distance-learning program. The court held that the fact that the plaintiff had enrolled in the online program from Delaware was not sufficient to confer personal jurisdiction over the university. It explained:

> [T]here is no evidence that [the university] targeted its Web site to potential students in Delaware, nor that the school engaged in business with anyone in Delaware other than Kloth and one other student . . . . [A]lthough [the university] certainly could have foreseen that students from Delaware, or any other state, might choose to participate in their distance learning program because the Web site is accessible to a nationwide (indeed, global) audience, this foreseeability alone cannot satisfy the purposeful availment requirement.

*Kloth*, 320 F. App'x at 116 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). Although the court ostensibly rested its decision on a statutory basis, its reasoning relied on the same principles employed in the constitutional due-process analysis. *Id.* at 114-18 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *International Shoe*, 326 U.S. at 316; *Toys "R" Us, Inc. v. Step Two*, 318 F.3d 446 (3d Cir. 2003); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)).[9] The court's conclusion, moreover, was consistent with its earlier decisions holding that, as a matter of due process, "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related

---

[9] In any event, the Delaware long-arm statute, like that of Massachusetts, "confers jurisdiction to the maximum extent possible under the due process clause." *Kloth*, 320 F. App'x at 115 n.1.

contacts." *Toys "R" Us*, 318 F.3d at 454; *see also Marten v. Godwin*, 499 F.3d 290, 298-99 (3d Cir. 2007) (holding that court lacked special jurisdiction over the University of Kansas based on its expulsion of a Pennsylvania resident from its internet-based education program, allegedly in retaliation for plaintiff's exercise of his freedom of expression under the First Amendment).

At least two federal courts have resolved the issue the other way, holding a university's enrollment of an out-of-state student in an online distance-learning program satisfies the purposeful availment requirement with respect to the state of the student's residence. *See Perrow v. Grand Canyon Educ., Inc.*, 2010 WL 271298, at *4-5 (S.D. Ohio Jan. 15, 2010); *Watiti*, 2008 WL 2280932, at *8-9. Those cases, however, are distinguishable. In *Perrow*, the defendant online university was "in contact with approximately 1,000 Ohio residents, and [] had repeated contacts with [the plaintiff], fully aware that she was located in Ohio." 2010 WL 271298, at *4. The university in *Perrow* also actively solicited business in Ohio, regularly sending a representative to a career fair located there. *Id.* at *5. Similarly, in *Watiti*, the defendant online university "specifically recruited New Jersey residents for enrollment. Indeed, it advertised in the state[ and] engaged in pre-enrollment sessions [there]." 2008 WL 2280932, at *8.[10]

Here, in contrast, USSA has not purposefully directed its activities at Cheng in Massachusetts. He enrolled while a resident of Alabama. USSA has only a handful of

---

[10] Cheng has also provided the Court with a copy of an opinion from the Central District of California that he describes as a case in which "[USSA] has been sued for similar practices for which the Plaintiff brought suit without successful jurisdictional challenge." (Pl. Mem. at 2; Ex. 3). The opinion provided to the Court is a report and recommendation from a magistrate judge on a request to proceed *in forma pauperis*, pursuant to 28 U.S.C. § 1915(e)(2)(B). *Arden v. United States Sports Acad.*, 2018 WL 4378774, at *1 (N.D. Cal. Feb. 6, 2018), *report and recommendation adopted*, 2018 WL 4378755 (N.D. Cal. Mar. 6, 2018). The fact that USSA did not file, or had not yet filed, a motion to dismiss for lack of personal jurisdiction in an unrelated case, involving a different plaintiff bringing different claims, and taking place in a different jurisdiction, is not particularly relevant to the jurisdictional analysis here.

Massachusetts-based students. It does not send any representatives to Massachusetts career fairs, hold pre-enrollment information sessions there, or otherwise actively solicit business in the state, other than by maintaining a website that is accessible to Massachusetts residents. While some of its communications and transactions with Cheng—including e-mails concerning his degree requirements and re-enrollment and the act of accepting his tuition payment—occurred while he was a resident of Massachusetts, that was only be virtue of his unilateral act of moving there. *See Prep Tours, Inc. v. American Youth Soccer Org.*, 913 F.3d 11, 20, 24, 27 (1st Cir. 2019) ("[A]ny contacts that cannot be attributed 'proximately' to the defendant's own activities constitute [the plaintiff's] 'unilateral' activity [and] cannot establish purposeful availment.") (quoting *Burger King Corp.*, 471 U.S. at 474-75).[11] Moreover, he only moved to Massachusetts after enrolling in USSA and completing several years' worth of coursework, all while living in Alabama. Indeed, there is nothing in the present record to suggest that USSA was aware that Cheng was living in Massachusetts at the time of the present communications and his subsequent re-enrollment. *See Watiti*, 2008 WL 2280932, at *11 ("[W]here an asserted basis for personal jurisdiction is email communications, a threshold question that should be asked with respect to the issue of 'purposeful availment' is whether there is any indication in the substance of the emails, the email address itself, or other facts incident to the communications that the sender of the emails was aware that the recipient was located in or would be accessing the emails from the forum state.").

On balance, the reasoning of the Third Circuit in *Kloth* is persuasive. Cheng's enrollment

---

[11] It is not clear whether these communications were by e-mail, telephone, or mail. At various points in the complaint and his memorandum, he refers to "letters" he wrote and received from USSA, "sp[eaking]" to USSA or receiving an "electronic message" from USSA. Most commonly, he simply does not specify the medium of communication. (*See* Compl. ¶¶ 17-20, 22; Pl. Mem. at 2). His memorandum also refers to an "Ex. 4" in connection with some of these communications, but that exhibit does not appear to have been included in his filing with the court. (*See* Pl. Mem. at 2).

in the distance-learning program while in Alabama, followed by a unilateral move to Massachusetts, is not sufficient for this court to establish personal jurisdiction in Massachusetts over USSA. That conclusion also accords with other decisions that have addressed the application of principles of personal jurisdiction in cases where an in-state plaintiff has accessed a website that is operated from outside the Commonwealth and is not specially directed to users within the state. *See, e.g.*, *BroadVoice*, 733 F. Supp. 2d 219, 226 (D. Mass. 2010) (holding that the operation of a website did not establish personal jurisdiction where the website "was aimed at Massachusetts only in the sense that it could be accessed by Massachusetts residents," where its owner did nothing to direct its content to residents of Massachusetts "as opposed to the world at large," and where there was no evidence of any Massachusetts resident other than the defendant having accessed it); *Sportschannel*, 2010 WL 3895177, at *7 (holding that "a website with the features that are now common, including a registration page, simple trivia, ability to email the website operators, stream-line video, and 'fan' or 'share' a page or video, cannot be sufficient to enable the site's owners to be haled into court in any forum in which it's accessible").

In sum, USSA has not purposefully availed itself of the privilege of conducting business in Massachusetts. There is not, therefore, a sufficient basis to satisfy the minimum requirements for the exercise of jurisdiction under the Due Process Clause.

### III.    *Forum Non Conveniens*

USSA has also moved to dismiss the complaint for *forum non conveniens*. As discussed above, that motion will be treated as a motion, in the alternative, to transfer the case to a district court in Alabama, pursuant to 28 U.S.C. § 1404(a). In any event, because the motion to dismiss for lack of personal jurisdiction will be granted, the Court does not need to reach the issue of transfer.

## IV. **Conclusion**

For the foregoing reasons, defendant's motion to dismiss for lack of personal jurisdiction is GRANTED.

**So Ordered.**

Dated: March 14, 2019

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge